STATE OF CONNECTICUT *v.* FRANK WAGER
(10962)

DUPONT, C. J., DALY and LAVERY, Js.

Argued June 2—decision released August 10, 1993

418

*Christine Perra,* special public defender, for the appellant (defendant).

*Mitchell S. Brody,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *James G. Clark,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant appeals from a judgment following his convictions, after a jury trial, of robbery in the first degree, conspiracy to commit robbery in the first degree, and larceny in the third degree. The defendant claims that (1) the trial court improperly failed to strike a witness' trial testimony although the witness' prior taped statement had been destroyed by the police, (2) the trial court improperly allowed into evidence a transcription of the witness' taped statement, and (3) the evidence offered at trial was insufficient to support his convictions. We affirm the judgment of the trial court.

The jury could reasonably have found certain facts. On June 21, 1988, a lone male entered and robbed People's Bank in West Haven by displaying a gun and demanding cash from a teller. A video surveillance camera recorded the male who was later identified as Leroy Jones. The next day, in a statement to the police that was tape-recorded, Jones acknowledged responsibility for the robbery. He also stated that he had planned the robbery with the defendant. According to Jones, the defendant gave him advice on how to commit the robbery, gave him the gun used in the robbery, and planned to enter the bank with him. Each was to rob a differ-

ent teller. They met prior to the robbery, but only Jones entered the bank. After fleeing the scene of the robbery, Jones and the defendant met and the defendant received $500 from Jones.

Jones' taped statement was transcribed within several days of its making. The detective who interviewed Jones listened to the tape of Jones' interview, and then reviewed the written transcription but did not directly compare the tape and transcription. Jones did not review the transcription of his statement at that time, but Jones did have a copy of the transcription at his trial for robbery. At the sentencing of Jones on May 31, 1989, the trial court ordered the destruction of the tape recording of Jones' statement. The police did not arrest the defendant until one year later on July 16, 1990, although a warrant for his arrest was pending at the time the court ordered the destruction.[1] The detective who destroyed the tape pursuant to the court order did not question the court order or consult with his superiors before destroying the tape even though he knew the defendant was involved in the robbery. The detective claimed that he assumed that Jones and the defendant were tried together, but he did not know the resolution of the defendant's case or if the defendant had been arrested. In keeping with his usual practice, the detective followed the court order and destroyed the tape on June 6, 1989, without checking on the status of the defendant's case.

At the defendant's trial, the trial court admitted the transcription of Jones' taped statement into evidence over the defendant's objection and refused the defendant's request to strike Jones' live testimony. As a state's witness, Jones testified out of the presence of the jury that the transcription was an accurate copy

[1] The arrest warrant application was prepared on June 21, 1988, prior to Jones' statement, and was authorized on June 22, 1988. Probable cause was found without considering Jones' statement.

of the taped statement he had made to the police in 1988, and that it contained the same words he had used then. He testified to the same effect in front of the jury. Jones had signed the transcription and sworn to its accuracy about a week before the defendant's trial, which was about three years after Jones had made the statement.[2] Jones also testified out of the presence of the jury that he was under the influence of cocaine at the time of the statement, which he claimed may have affected his ability to remember exactly what he had said to the police.[3] He testified to the same effect in front of the jury. During direct examination in front of the jury, Jones recanted his taped statement, stating that the defendant was not involved in the robbery. During cross-examination, Jones stated that he made up the information about the defendant's involvement because he hoped to receive a reduced sentence and because the police pressured him to implicate the defendant.

One witness for the state, a police officer, testified that he had seen the defendant with another male on the day before and the day of the robbery in the area of the bank. Another witness testified that he had observed the defendant with another male walking back and forth between the bank and various shops near the bank on the morning before the robbery. The two witnesses identified the other male as Jones from the bank's videotape of the crime. The detective who was present when Jones' statement was taped testified that in his opinion Jones was not under the influence of narcotics at the time of the statement.

[2] Jones had signed the transcription of his statement and had sworn to its accuracy in the presence of the state's attorney and the state's investigator.

[3] The transcript reveals that the first testimony about drugs affecting Jones' recall ability came when defense counsel, out of the presence of the jury and on cross-examination, inquired whether Jones was under the influence of drugs at the time of his statement.

## I

The defendant first claims that he was prejudiced by the state's failure to preserve the tape of Jones' statement and by the trial court's failure to strike Jones' testimony. The defendant claims that the state did not meet the disclosure requirements of Practice Book § 752[4] because the state could not produce the tape for the defendant. According to the defendant, he was prejudiced by the nonproduction of the tape because (1) the jury could not compare Jones' demeanor at trial with his voice at the time of the taped statement, and (2) the tape and transcription could not be compared for discrepancies. The defendant claims that Jones' trial testimony should have been stricken pursuant to Practice Book § 755.[5] We disagree.

The state claims that the tape of Jones' statement is not a statement under Practice Book § 752 because the statutory disclosure scheme is designed to assist a defendant in impeaching, not bolstering, the testimony of a state's witness. According to the state, since the defendant wants the tape in order to bolster Jones' trial court testimony that the defendant did not help him commit the robbery, the tape is not a statement for purposes of § 752. The state argues that a statement within the meaning of § 752 must assist in

---

[4] Practice Book § 752 provides: "After a witness called by the state has testified on direct examination at trial, the judicial authority shall, on motion of the defendant, order the state to produce any statement of the witness in the possession of the state or its agents, including state and local law enforcement officers, which statement relates to the subject matter about which the witness has testified."

[5] Practice Book § 755 provides: "If the prosecuting authority elects not to comply with an order of the judicial authority to deliver to the defendant any statement of a witness who has testified or such portion thereof as the judicial authority may direct, the judicial authority shall strike from the record the testimony of the witness, and the trial shall proceed unless the judicial authority, in his discretion, upon motion of the defendant, determines that the interests of justice require that a mistrial be declared."

impeaching a state's witness, and the use of the statement for anything other than that limited purpose removes it from the narrow thrust of Practice Book §§ 748 through 755.

We conclude that the tape of Jones' statement to the police is a statement for the purposes of Practice Book § 752. Section 752 requires the state to provide to the defendant any statement made by a state's witness in possession of the state and relating to the subject matter about which the witness has testified. The definition of "statement" includes a "recording . . . which is a substantially verbatim recital of an oral statement made by a person and recorded contemporaneously with the making of such oral statement." Practice Book § 749. A tape recording of a witness' statement to the police fits this definition, and our Supreme Court has indicated that such a tape is a statement. *State* v. *Cerilli,* 222 Conn. 556, 577, 610 A.2d 1130 (1992).

Whether a statement is a statement for the purposes of Practice Book § 752 must be determined at the time it is made. At the time Jones' statement was made and destroyed, it was a statement by a state's witness who was expected to testify against the defendant and whose testimony the defendant would be expected to attempt to impeach. As such, the state had an obligation to preserve it pursuant to Practice Book § 752.

Practice Book § 752 provides that after a witness called by the state has testified on direct examination, the state must provide the defendant with any statement of the witness in the state's possession when the statement relates to the subject matter of the witness' testimony. If the state does not provide a witness' statement under this disclosure requirement, the trial court must strike the witness' testimony or order a mistrial. Practice Book § 755. The sanction of striking a witness'

testimony is unnecessary, however, where nonproduction of the statement is harmless. *State* v. *Williamson,* 212 Conn. 6, 13, 562 A.2d 470 (1989); see *State* v. *Cerilli,* supra, 577; *State* v. *Belle,* 215 Conn. 257, 268, 576 A.2d 139 (1990); *State* v. *Johnson,* 214 Conn. 161, 168, 571 A.2d 79 (1990).

We, therefore, must decide whether the state's failure to produce the tape required the sanction of striking the witness' trial testimony. When the police have acted deliberately but not in bad faith in destroying a statement, a reviewing court must determine whether nonproduction was harmless by balancing the state's culpability for the nonproduction against the resulting prejudice to the defendant. *State* v. *Cerilli,* supra; *State* v. *Belle,* supra; *State* v. *Johnson,* supra; *State* v. *Williamson,* supra, 14. The state bears the burden of establishing harmlessness. *State* v. *Cerilli,* supra; *State* v. *Belle,* supra; *State* v. *Johnson,* supra, 172; *State* v. *Williamson,* supra, 18. In this case, the state concedes that it acted deliberately in destroying the tape, while the defendant does not argue that the state acted in bad faith. In fact, since the state destroyed the tape pursuant to a court order, it would be difficult to show bad faith.

There are two possible standards of proof by which the state could establish harmlessness. If nonproduction adversely affects the defendant's ability to cross-examine the state's witness and thereby infringes upon the defendant's federal sixth amendment right of confrontation, then the state must establish harmlessness beyond a reasonable doubt. *State* v. *Cerilli,* supra, 577–78; *State* v. *Belle,* supra, 269; *State* v. *Johnson,* supra, 173; *State* v. *Williamson,* supra, 20. If, however, nonproduction does not infringe upon the right of confrontation, then the state must establish only that it is more probable than not that the nonproduction was harmless. *State* v. *Cerilli,* supra, 577; *State* v. *Belle,*

supra, 269–71; *State* v. *Johnson,* supra, 173–75; *State* v. *Williamson,* supra, 20–23. Generally, nonproduction " 'is not of constitutional dimension . . . .' " *State* v. *Johnson,* supra, 173; *State* v. *Williamson,* supra, 20.

In determining whether a defendant's constitutional right of confrontation has been violated, the courts have considered whether the trial or reviewing court has access to the unproduced material, whether the witness has adopted a transcription of the statement within a short time after making the statement, and whether the defendant's conviction rested on the testimony of the witness. *State* v. *Belle,* supra, 269–70; *State* v. *Johnson,* supra, 174; *State* v. *Williamson,* supra, 21–23.

In this case, neither the trial court nor this court have access to the destroyed tape. The witness also did not adopt the transcription of his statement within a short time after it was made. The defendant's conviction, however, did not rest on Jones' trial testimony since that testimony was exculpatory. The conviction could not have rested on the testimony since the defendant would have been acquitted had the jury relied on the testimony. Thus, an important factor for finding a constitutional deprivation has not been satisfied.

Furthermore, the right of confrontation relates to the cross-examination and impeachment of a witness, and involves the right of a defendant to face and cross-examine a state's witness in court.[6] "The primary interest secured by confrontation is the right to cross-examination; *Douglas* v. *Alabama,* 380 U.S. 415, 418, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965); and an impor-

---

[6] "Confrontation of witness" is defined as: "[a] constitutional right of an accused to face a witness in court so that the accused may make any objection he has to the witness, be present when the witness is examined, and have opportunity for cross examination. . . ." Ballentine's Law Dictionary (3d Ed. 1969).

tant function of cross-examination is the exposure of a witness' motivation in testifying. *Greene* v. *McElroy,* 360 U.S. 474, 496, 79 S. Ct. 1400, 3 L. Ed. 2d 1377 (1959)." (Internal quotation marks omitted.) *State* v. *Santiago,* 224 Conn. 325, 331, 618 A.2d 32 (1992); *State* v. *Arline,* 223 Conn. 52, 60, 612 A.2d 755 (1992).[7]

In this case, the defendant wanted the tape in order to impeach the prior taped statement of Jones, rather than to impeach Jones' in-court testimony. The impeachment of the prior statement is not a right contemplated by the sixth amendment because it does not directly relate to the right to cross-examine a state's witness in court. Here, the defendant had the opportunity to cross-examine Jones and question Jones' motivation for testifying. For instance, the defendant was allowed to ask Jones whether he was offered anything by the state or the defendant in exchange for his testimony. Although the tape was unavailable, the defendant was allowed to ask Jones about his mental and physical condition at the time of the statement, and whether he was under the influence of drugs at the time of the taped statement. The defendant also was allowed to ask Jones if his speech was slow or slurred at the time of the statement.

Therefore, we conclude that the nonproduction of the tape did not result in a constitutional violation. Without such a constitutional deprivation, the state must prove only that it is more probable than not that the nonproduction of the tape was harmless. The test for such a determination is made by balancing the state's

---

[7] "In order to comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury facts from which the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. *Davis* v. *Alaska,* 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *State* v. *Lubesky,* [195 Conn. 475, 482, 488 A.2d 1239 (1985)]." (Internal quotation marks omitted.) *State* v. *Santiago,* 224 Conn. 325, 331, 618 A.2d 32 (1992); *State* v. *Arline,* 223 Conn. 52, 60, 612 A.2d 755 (1992).

culpability for the nonproduction against the prejudice to the defendant due to the nonproduction. In this case, the state is only minimally culpable because it was directed to destroy the tape by court order.

The reviewing courts of this state have considered a number of factors in assessing prejudice. For instance, the courts have considered (1) whether critical inconsistencies exist between the trial testimony and the prior statements, and between the prior statements themselves; *State* v. *Belle,* supra, 271; *State* v. *Johnson,* supra, 175; *State* v. *Williamson,* supra, 24–25; (2) whether the witness adopted the transcription within a short time after the statement was made; *State* v. *Belle,* supra, 272; *State* v. *Johnson,* supra, 176; *State* v. *Williamson,* supra, 25; (3) whether the defendant had access to other impeachment sources for cross-examination; *State* v. *Joly,* 219 Conn. 234, 247–48, 593 A.2d 96 (1991); *State* v. *Johnson,* supra, 175; *State* v. *Williamson,* supra, 25–26; (4) whether the conviction rested on the witness' testimony; *State* v. *Joly,* supra, 247; *In re Jesus C.,* 21 Conn. App. 645, 651, 575 A.2d 1031, cert. dismissed, 216 Conn. 819, 581 A.2d 1055 (1990); *State* v. *Sinclair,* 20 Conn. App. 586, 593, 569 A.2d 551 (1990); and (5) whether a court had access to the unproduced material. *State* v. *Williamson,* supra, 22, 26; *In re Jesus C.,* supra, 652. None of the foregoing cases listed or discussed all five of these factors. In the present case, only the first three factors need to be considered.

There are inconsistencies between the witness' trial testimony and taped statement. On tape Jones stated that the defendant helped commit the robbery, while at trial Jones stated that the defendant was not involved. Nevertheless, this inconsistency could benefit only the defendant, as Jones' trial testimony provided evidence that, if believed by the jury, would acquit the defendant. Furthermore, Jones never denied that

he had implicated the defendant in the statement or that he had made it. Jones testified only that he was unsure of the transcription's accuracy because of his drug use at the time of the statement. Since the witness stated that the transcription reflects what he said to the police, a significant discrepancy between the tape and transcription is unlikely.

Jones adopted the transcription by signature and by statement under oath over three years after its making. Nevertheless, the defendant was only minimally prejudiced by this lapse of time. While Jones' memory may have faded over three years and he may have forgotten certain details regarding his taped statement to the police, it is not likely that Jones' memory as to with whom he had conspired faded.

The defendant claims prejudice since the jury could not compare the witness' demeanor in court to his voice on the tape. Prejudice does exist to the extent that the tape is no longer available, but, as indicated previously, the defendant was only minimally prejudiced in this regard since the trial court did not prevent the defendant from questioning the witness specifically as to his condition at the time of the taped statement. The trial court also did not prevent the defendant from questioning the officer who conducted the interrogation about Jones' condition at the time of the statement.

We conclude that the trial court correctly refused to strike the witness' trial testimony.

## II

The defendant claims that the trial court should not have admitted the transcription as substantive evidence as well as for impeachment purposes because the transcription is not sufficiently reliable. We disagree.

A prior written inconsistent statement is admissible as substantive evidence where (1) the declarant has

signed the statement, (2) the declarant has personal knowledge of the facts stated, and (3) the declarant testifies at trial and is subject to cross-examination. *State* v. *Whelan,* 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). The defendant claims that while the declarant, Jones, did sign the transcription, the first requirement of *Whelan* has not been met because the signature was made three years after the making of the statement. According to the defendant, the declarant must sign the transcription within a short time after the statement is made in order to ensure reliability and meet the principles of *Whelan.*

Neither *Whelan* nor subsequent cases have discussed whether the declarant must sign the statement within a short time after it was made. Whether a statement is made within a short time after the crime occurred has, however, been considered in determining reliability. *State* v. *Grant,* 221 Conn. 93, 100–101, 602 A.2d 581 (1992); *State* v. *Alvarez,* 216 Conn. 301, 314, 579 A.2d 515 (1990); see *State* v. *Buster,* 224 Conn. 546, 557–58, 620 A.2d 110 (1993); *State* v. *Whelan,* supra, 750. None of these cases requires that the statement be signed at any particular time. Therefore, if there is nothing to indicate that the time when the statement is signed has an impact on reliability, there is no reason to exclude it from the *Whelan* rationale.

These cases have emphasized that to be admissible as substantive evidence, a prior inconsistent statement must have been made under circumstances that reasonably ensured reliability and trustworthiness. *State* v. *Buster,* supra, 556; *State* v. *Grant,* supra, 100; *State* v. *Whelan,* supra, 752; *State* v. *Green,* 16 Conn. App. 390, 396–97, 547 A.2d 916, cert. denied, 210 Conn. 802, 553 A.2d 616 (1988). *Whelan* limits the substantive use of prior inconsistent statements to situations where

" 'the likelihood of fabrication is slight and the risk of coercion, influence or deception is greatly reduced.' " *State* v. *Grant,* supra; *State* v. *Whelan,* supra, 753.

In this case, the requirements of *Whelan* are met. First, Jones did eventually sign each of the nine pages of the transcription. There is no evidence or indication that Jones refused to sign the transcription at any time.[8] Second, Jones had pertinent personal knowledge. Third, Jones testified at trial and was subject to cross-examination. Therefore, while the jury was not able to consider Jones' demeanor as indicated by Jones' voice during the taped statement, the jury had the opportunity to observe Jones' demeanor and assess his credibility at trial. See *State* v. *Alvarez,* supra, 314–15; *State* v. *Whelan,* supra, 755. The jury in this case could determine whether to believe Jones' prior taped statement, his trial testimony, or neither. See *State* v. *Alvarez,* supra, 315.

We conclude that the trial court properly admitted the transcription as substantive evidence.

### III

We consider last whether the evidence presented at trial was sufficient to sustain the convictions of the defendant. The two part test for evaluating the sufficiency of the evidence in a jury trial is well established. First, the reviewing court construes the evidence presented at trial in a light most favorable to sustaining the verdict. *State* v. *Baldwin,* 224 Conn. 347, 368, 618 A.2d 513 (1993); *State* v. *Gray,* 221 Conn. 713, 719–20, 607 A.2d 391, cert. denied,      U.S.    , 113 S. Ct. 207, 121 L. Ed. 2d 148 (1992); *State* v. *Allen,* 216 Conn.

---

[8] The detective who was present during Jones' taped statement testified that Jones was not asked to sign the transcription before Jones' trial. The detective testified that, as a matter of policy, a signature generally is not sought at the time the trancription is completed.

367, 380, 579 A.2d 1066 (1990). The reviewing court then determines whether the jury could have reasonably found, on the basis of the facts established and the inferences reasonably drawn from them, that the cumulative effect of the evidence established guilt beyond a reasonable doubt. *State* v. *Baldwin,* supra; *State* v. *Gray,* supra, 720; *State* v. *Allen,* supra. In conducting this review, the probative force of the evidence is not diminished where the evidence, in whole or in part, is circumstantial rather than direct. *State* v. *Baldwin,* supra; *State* v. *Gray,* supra; *State* v. *Allen,* supra, 380–81.

In this case, a jury reasonably could have found that the evidence established guilt beyond a reasonable doubt. The jury could reasonably have found the defendant guilty beyond a reasonable doubt on the basis of Jones' signed, sworn statement that the defendant was involved in the robbery, and on the identification of the defendant and Jones in the area of the bank the day before and the day of the robbery.

In determining the sufficiency of the evidence, a reviewing court cannot pass on the credibility of witnesses. *State* v. *Baldwin,* supra, 367–68; *State* v. *Robinson,* 213 Conn. 243, 256, 567 A.2d 1173 (1989). Furthermore, the jury is to draw whatever inferences from the evidence or facts established by the evidence it deems reasonable and logical. *State* v. *Stanley,* 223 Conn. 674, 681, 613 A.2d 788 (1992); *State* v. *Gray,* supra, 721. The jury is not prevented from drawing inferences consistent with guilt nor is it required to draw inferences consistent only with innocence. *State* v. *Stanley,* supra; *State* v. *Gray,* supra. While it is true that Jones lied either at trial or during his taped statement, the jury was free to conclude that Jones told the truth when he implicated the defendant during his taped statement.

Therefore, we conclude that the evidence was sufficient to sustain the defendant's convictions.

The judgment is affirmed.

In this opinion the other judges concurred.