******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JOHN
WILLIAM DAVIS, JR.
(SC 19511)

Rogers, C. J., and Palmer, McDonald, Espinosa and Robinson, Js.

*Argued November 15, 2016—officially released March 14, 2017*

*Jonathan M. Sousa*, special deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, former state's attorney, and *Lisa D'Angelo*, assistant state's attorney, for the appellant (state).

*Laila M. G. Haswell*, senior assistant public defender, with whom, on the brief, was *Lauren Weisfeld*, chief of legal services, for the appellee (defendant).

*Opinion*

ESPINOSA, J. In this certified appeal, the state appeals from the judgment of the Appellate Court, which reversed in part the judgment of the trial court convicting the defendant, John William Davis, Jr., of, inter alia, carrying a pistol without a permit in violation of General Statutes § 29-35 (a) and unlawful possession of a weapon in a vehicle in violation of General Statutes (Rev. to 2011) § 29-38 (a).[1] *State* v. *Davis*, 156 Conn. App. 175, 195, 111 A.3d 567 (2015). The state contends that the Appellate Court improperly concluded that the evidence presented at trial was insufficient to support the defendant's conviction of those offenses because the state failed to offer direct evidence to prove that the defendant lacked a temporary state pistol permit issued by a town in the first instance. Id., 180–81. We agree and, accordingly, reverse in part the judgment of the Appellate Court.

The jury reasonably could have found the following facts. On July 24, 2011, while assisting another officer during a motor vehicle stop on Poplar Street in New Haven, Officer Juan Ingles of the New Haven Police Department observed a grey Nissan traveling down the street with no front license plate in violation of General Statutes § 14-18. As the Nissan approached his position, Ingles also observed that the Nissan had two occupants: a driver, who was later identified as the defendant, and a passenger. Ingles observed that the defendant was not wearing a seat belt. After noticing the two violations, Ingles decided to initiate a motor vehicle stop and backed his patrol car into a driveway in order to position himself to view the number on the rear license plate of the Nissan. Ingles entered the license plate number into his patrol car's mobile data terminal and discovered that the plate was registered to a vehicle of a different make and model. Ingles then pulled his patrol car behind the Nissan and activated his emergency lights in order to conduct a motor vehicle stop. The defendant did not immediately stop the vehicle and proceeded to drive for a number of blocks before pulling the Nissan over. Once the Nissan stopped, Ingles, suspecting that the occupants might flee, remained in his patrol car but opened and slammed shut the door to his patrol car so that the occupants might believe that he was out of his vehicle. After the door was slammed shut, the defendant, still operating the Nissan, fled.

Ingles pursued the Nissan, and the defendant led him on a high speed chase through New Haven. The defendant drove through red lights, drove on the wrong side of the road, and failed to yield to traffic. The defendant eventually entered the highway, Interstate 91, and traveled for a distance before exiting via an entrance ramp—traveling the wrong way. With more patrol cars joining Ingles in the pursuit, the defendant drove onto sidewalks, over lawns, and directly toward at least one

patrol car, whose operator narrowly avoided the collision by leaving the road. When the Nissan struck a curb and became immobilized, the defendant and his passenger exited the vehicle and fled on foot. Ingles pursued the defendant on foot and observed that immediately upon exiting the Nissan and intermittently throughout the pursuit, the defendant held the waistband of his pants. Another officer pursued the passenger.

The defendant ran toward the rear of a nearby restaurant and scaled a dumpster, where Ingles observed the defendant reach into his waistband, withdraw a black handgun, raise it above his head, and throw it into the dumpster. The defendant jumped off the dumpster and ran through a busy intersection onto residential properties. After running through a number of yards, the defendant attempted to jump a fence, but was blocked by debris, causing him to be cornered by Ingles and other police officers.

The defendant again attempted to flee, did not comply with the officers' orders, and continued holding his waistband, which prompted Ingles to use a Taser on the defendant twice. As Ingles and the other officers attempted to lift the defendant to his feet, he attempted to bite Ingles, causing Ingles to use his Taser a third time. Ingles used his Taser on the defendant a fourth time after the defendant pushed him. Once the defendant was subdued, Ingles identified the defendant by a Connecticut identification card found on his person.

A police canine unit trained in evidence recovery was brought to the dumpster where Ingles had observed the defendant discarding the handgun. After the police dog alerted to the dumpster, the officers searched and discovered a Smith & Wesson, Model SW 40F, .40 caliber handgun, which matched the description of the gun that Ingles had observed the defendant remove from his waistband and discard in the dumpster. The handgun, which was loaded and had a round in the chamber, was later transported to the forensic science laboratory of the Department of Emergency Services and Public Protection (department), where James Stephenson, a member of the firearm and tool mark section, determined that it was fully operable and had a partially obliterated serial number. Stephenson determined that the serial number had been damaged intentionally. Utilizing an undamaged bar code on the gun, Stephenson ascertained its serial number. After searching for that serial number in the NCIC database,[2] Stephenson discovered that the gun had been stolen in Hamden. Ingles also testified that after the firearm was recovered, he determined that the defendant was lawfully unable to carry a firearm.

The defendant was arrested and charged with criminal possession of a firearm in violation of General Statutes (Rev. to 2011) § 53a-217 (a) (1), carrying a pistol

without a permit in violation of § 29-35 (a), altering a firearm identification mark in violation of General Statutes (Rev. to 2011) § 29-36, unlawfully carrying a weapon in a vehicle in violation of § 29-38, criminal attempt to assault a police officer in violation of General Statutes § 53a-49 (a) (2), reckless endangerment in the first degree in violation of General Statutes § 53a-63, interfering with an officer in violation of General Statutes § 53a-167a, and reckless driving in violation of General Statutes § 14-222. The defendant pleaded not guilty to all charges and elected a trial to the court on the charge of criminal possession of a firearm, and a jury trial on all other charges.

During the jury trial, Detective Vincent Imbimbo of the firearms licensing unit of the department testified that he determined that the defendant did not possess a valid state pistol permit. He briefly described the permitting process: "[O]nce you get your temporary permit from the town you come to the state and get your state permit. . . . We have databases and everyone that has a pistol registered, a pistol permit, a gun registered, security guards, we have everyone in one database." On redirect examination, Imbimbo clarified the permitting process, noting that applicants must first apply to their local police department for a temporary state pistol permit, which is valid for sixty days. Imbimbo explained that if the local authority, after conducting a background investigation, grants a temporary pistol permit, the application "comes up to" the department, which runs further background investigations before issuing a renewable state pistol permit.

Imbimbo testified that he conducted a search of the state database—which he agreed was an "accurate representation of those citizens who possess a valid pistol permit"—using the defendant's name and date of birth.[3] Imbimbo determined that according to the database, the defendant never possessed a state pistol permit. On cross-examination, defense counsel inquired as to whether Imbimbo's research included both temporary state pistol permits issued by local authorities and renewable state pistol permits. The following colloquy between defense counsel and Imbimbo ensued:

"Q. . . . So is it possible that there would be a town permit issued separate and distinct from the state permit which would be issued after one had obtained a town permit?

"A. Correct.

"Q. So, indeed, [the defendant] may have in fact possessed a town permit and never in fact went to the next step to evolve to a state level; is that correct?

"A. Right. If he did have a temporary permit from the town it would be valid for [sixty] days from the issuance from the town.

"Q. . . . And did you check the possibility of him

having a town permit?

"A. I cannot check the possibility of him having a town permit. . . .

"Q. So there is a *possibility* that at one point, perhaps even at this point during the time in question that he may have in fact possessed a valid town permit?

"A. *Possibility*, yes. If it never came to our office to get a valid state permit it's a *possibility*." (Emphasis added.)

Officer Manmeet Colon of the firearms unit of the New Haven Police Department also testified for the state regarding the defendant's lack of a pistol permit. Colon stated that he checked the files of the New Haven Police Department, which issues temporary state pistol permits for residents of New Haven, and verified that there were no temporary state pistol permits for anyone with the defendant's name or date of birth in New Haven at the time of the arrest. Colon also testified that a search of the state firearms log—which would note permits issued by the state—yielded no results for the defendant's name. On cross-examination, Colon stated that although his search of the state firearms log displays pistol permit information from throughout the state, he would be unable to ascertain from this search whether the defendant had a temporary state permit issued by any municipality other than New Haven.

The jury found the defendant guilty of all charges except altering a firearm identification mark and criminal attempt to assault a police officer and the court found the defendant guilty of criminal possession of a firearm. As to the charge of criminal possession of a firearm, the defendant stipulated that he previously had been convicted of a felony, but the trial court excluded that evidence from the jury trial to avoid potential prejudice to the defendant. The court rendered judgment in accordance with the verdict and the finding, and sentenced the defendant to a total effective term of twelve years of incarceration, execution suspended after nine years, and three years of probation.

The defendant appealed to the Appellate Court, which reversed the judgment of the trial court in part and affirmed it in part.[4] *State* v. *Davis*, supra, 156 Conn. App. 195. The Appellate Court held that the evidence was insufficient to sustain the defendant's conviction of carrying a pistol without a permit and unlawful possession of a weapon in a vehicle because the state failed to prove beyond a reasonable doubt that the defendant did not possess a valid pistol permit, which is an element of both crimes. Id., 180–81. Specifically, the Appellate Court determined that the state presented insufficient evidence that the defendant lacked a temporary state permit because the state did not prove that he resided or owned a business in New Haven. Id., 188–89. The Appellate Court also held that the jury could not infer

that the defendant did not possess a permit from evidence of the defendant's flight from the police because consciousness of guilt evidence cannot be relied on to prove a required substantive element of a crime. Id., 189. Lastly, the Appellate Court rejected the state's argument that Imbimbo's testimony alone, without a jury instruction on the permitting process pursuant to General Statutes (Rev. to 2011) § 29-28 (b), was sufficient to establish that applications for temporary state pistol permits must be forwarded to the state for further review and therefore would be discovered in a search of those records. Id., 189–91. This appeal by the state, following our grant of certification, followed. *State* v. *Davis*, 317 Conn. 921, 118 A.3d 62 (2015).

The state claims that the Appellate Court erred in reversing the defendant's conviction of carrying a pistol without a permit and unlawful possession of a weapon in a vehicle because the evidence was sufficient to prove that the defendant did not lawfully possess a valid pistol permit. Specifically, the state contends that the Appellate Court's decision was based on an improper application of the sufficiency of the evidence standard because it focused its analysis on the absence of direct evidence rather than the cumulative effect of both direct and circumstantial evidence to prove this element of the offenses. The defendant counters that the state failed to present evidence sufficient for the jury to find beyond a reasonable doubt that the defendant did not possess a pistol permit because it did not present evidence that the defendant was a resident of New Haven or lacked a temporary permit from any other town in the state, and the evidence did not establish that records of temporary pistol permits are automatically forwarded to the state. As an alternative ground for affirmance, the defendant claims that the state did not present sufficient evidence to prove the charge of unlawful possession of a weapon in a vehicle because it did not present evidence that the other occupant of the Nissan lacked a pistol permit.[5] We conclude that the state presented sufficient evidence to establish beyond a reasonable doubt that the defendant did not possess a state pistol permit and we reject the defendant's alternative grounds for affirming the judgment of the Appellate Court. Accordingly, we reverse in part the judgment of the Appellate Court.

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a [two part] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Ledbetter*, 275 Conn. 534, 542–43, 881 A.2d 290 (2005), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537 (2006).

We first examine the elements of the offenses at issue. To establish that a defendant is guilty of carrying a pistol without a permit in violation of § 29-35 (a), the state must prove that the defendant: (1) carried a pistol or revolver upon his or her person; (2) did so without the proper permit; and (3) was not within his or her dwelling house or place of business.[6] See *State* v. *Knight*, 266 Conn. 658, 667, 835 A.2d 47 (2003). In a prosecution of unlawful possession of a weapon in a vehicle in violation of § 29-38 (a), the state must prove that the defendant: (1) owned, operated or occupied the vehicle; (2) had a weapon in the vehicle; (3) knew the weapon was in the vehicle; and (4) had no permit or registration for the weapon. See *State* v. *Delossantos*, 211 Conn. 258, 273, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 645 (1989). Both

§§ 29-35 and 29-38 require the state to prove beyond a reasonable doubt that a defendant did not possess a pistol permit at the time of the offense.

The permitting process and qualifications for obtaining a pistol permit are codified in General Statutes (Rev. to 2011) § 29-28 and incorporated by reference into §§ 29-35 and 29-38. Specifically, General Statutes (Rev. to 2011) § 29-28 (b) sets forth a two step process for obtaining a pistol permit. An applicant must first submit an application for a temporary state pistol permit to the municipality where he or she resides or owns a business. General Statutes (Rev. to 2011) § 29-28 (b). If the applicant is not disqualified for any of the reasons enumerated in General Statutes (Rev. to 2011) § 29-28 (b) (1) through (10)—such as for a prior felony conviction—the local authority issues a nonrenewable temporary state pistol permit valid for sixty days. See General Statutes § 29-30 (c). Next, once the temporary state pistol permit is issued, the local authority is required to forward the application to the state licensing authority; General Statutes (Rev. to 2011) § 29-28 (b); which subsequently issues a renewable state pistol permit valid for five years. See General Statutes § 29-30 (c).

In the present case, when construing the evidence in the light most favorable to sustaining the guilty verdict, the cumulative impact of the evidence presented at trial reasonably and logically supported the jury's conclusion that the defendant was guilty beyond a reasonable doubt of carrying a pistol without a permit and unlawful possession of a weapon in a vehicle. From the testimony of Ingles, Stephenson, Imbimbo, and Colon, along with the reasonable and logical inferences to be drawn from that testimony, the jury reasonably could have concluded that the defendant did not possess a valid pistol permit.

Imbimbo testified that the defendant did not possess a renewable state issued pistol permit because his name and date of birth were not in the state permit database. Colon testified that the defendant never applied for a temporary pistol permit in New Haven and his name was not listed in the state firearms log.[7] This testimony constitutes uncontroverted direct evidence that the defendant did not possess a renewable state pistol permit at the time of the offense or a temporary state pistol permit issued by New Haven, the city where all events leading up to and including the defendant's arrest took place.

Additionally, there is ample circumstantial evidence in the present case from which the jury could have inferred that the defendant did not possess a temporary pistol permit. We have long held that a conviction can be sustained by circumstantial evidence alone. See *State* v. *Buhl*, 321 Conn. 688, 713, 138 A.3d 868 (2016) ("it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is cir-

cumstantial rather than direct" [internal quotation marks omitted]); see also *State* v. *Gary*, 273 Conn. 393, 405, 869 A.2d 1236 (2005); *State* v. *Perez*, 183 Conn. 225, 227, 439 A.2d 305 (1981); *State* v. *Cari*, 163 Conn. 174, 179, 303 A.2d 7 (1972). Ingles testified that the defendant fled from the police, discarded the handgun into a dumpster, and that, at the scene of the arrest, he determined that the defendant was not lawfully permitted to carry a firearm. Stephenson testified that the serial number on the handgun had been intentionally obliterated, in a likely attempt to conceal its origin, and, therefore, that the handgun was stolen. The jury reasonably could infer that this circumstantial evidence establishes that the defendant did not possess a valid pistol permit because a pistol permit holder, whether it be a temporary state permit or a renewable state permit, likely would not: (1) flee from police officers; (2) discard his handgun in a public place in an effort to distance himself from it while being pursued by police officers; (3) possess a handgun with an obliterated serial number; (4) possess a stolen handgun; and (5) be deemed to be unable to lawfully carry a firearm by a police officer at the scene of the crimes.[8] When viewed cumulatively with the direct evidence that the defendant lacked a renewable state pistol permit and a temporary state pistol permit from New Haven, the testimony provided sufficient circumstantial evidence from which the jury may have reasonably and logically inferred beyond a reasonable doubt that the defendant did not possess a valid temporary state pistol permit.

When construing the evidence presented by the state in the light most favorable to sustaining the guilty verdict—and with our focus on the evidence presented, not the evidence that the state failed to present—we hold that the jury reasonably could have concluded that the cumulative force of all the evidence—both direct and circumstantial—established that the defendant did not possess *any* pistol permit beyond a reasonable doubt, and therefore was guilty of carrying a pistol without a permit and unlawful possession of a weapon in a vehicle.

Notwithstanding the abundant direct and circumstantial evidence tending to prove that the defendant lacked a pistol permit, the defendant cites this court's decision in *State* v. *Beauton*, 170 Conn. 234, 239, 36 A.2d 1105 (1976), to support the proposition that the prosecution must have introduced direct evidence of the defendant's lack of both a temporary and renewable state permit in order for the evidence to be sufficient to support the jury's verdict. This argument ignores the fact that in 2001, General Statutes (Rev. to 2001) § 29-28 (b) was heavily amended by No. 01-130, § 4, of the 2001 Public Acts (P.A. 01-130). The previous statute provided for a dual permit system, whereby an applicant first would obtain a local permit from the town where he or she maintained a residence or a place of business. General

Statutes (Rev. to 2001) § 29-28 (b). This local permit allowed the holder to carry a handgun within that particular jurisdiction. General Statutes (Rev. to 2001) § 29-28 (b). The holder of a local permit would then have to obtain a separate state permit in order to carry a handgun within the state. General Statutes (Rev. to 2001) § 29-28 (b). Unlike the current two step, one permit system, the local and the state permits were two separate and distinct licenses, each valid for five years, and each fully renewable. General Statutes (Rev. to 2001) § 29-30 (b) and (c). Further, a licensee could allow the local permit to expire while maintaining the state permit. General Statutes (Rev. to 2001) § 29-30 (c). Essentially, prior to P.A. 01-130, a person may have held only a local permit indefinitely and would have been lawfully able to carry a handgun within his or her town. Additionally, that same person could have held a state permit only, and would have been lawfully able to carry a handgun in any town in Connecticut.

We find the defendant's reliance on *State* v. *Beauton*, supra, 170 Conn. 234, unpersuasive given the changes in permitting procedures made by P.A. 01-130. In *Beauton*, a case this court decided in 1976, the state presented evidence that the defendant lacked only a local permit, without presenting any evidence as to the absence of a state permit. Id., 238–39. This court found that the evidence was insufficient to support the defendant's conviction for violation of General Statutes (Rev. to 1975) § 29-38. Id., 240–41. The present case, in contrast to *Beauton*, involves the updated two step, unified permitting procedure as enumerated in General Statutes (Rev. to 2011) § 29-28 and as explained to the jury by the testimony of Imbimbo and Colon. Thus, unlike the permitting procedure prior to P.A. 01-130, the state in the present case was required to prove that the defendant lacked only a state permit, because there are no longer two separate and distinct pistol permits, but instead two steps in one unified permitting procedure. A person who lacks a renewable state pistol permit now is much less likely to possess a temporary permit than if he possessed a temporary permit prior to the 2001 amendments because temporary permits are not renewable, valid for only sixty days, and automatically evolve into a renewable permit if approved by the state.

To the extent that the defendant relies on Imbimbo's testimony that there was a "possibility" that the defendant may have possessed a valid temporary pistol permit despite Imbimbo's search of the state database, that statement could have been discounted by the jury or merely credited as evidence that a remote possibility existed that through some malfunction of the permitting process the temporary permit was never forwarded to the state. See *State* v. *Ledbetter*, supra, 275 Conn. 543 ("proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypoth-

esis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal" [internal quotation marks omitted]).

The defendant also urges us to affirm the judgment of the Appellate Court on the alternative ground that the state did not present sufficient evidence to prove the charge of unlawful possession of a weapon in a vehicle in violation of § 29-38 because it did not present evidence that the other occupant of the Nissan lacked a pistol permit. The defendant concedes that this alternative ground for affirmance was not preserved and therefore asks for review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We review the defendant's unpreserved claim because "any defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right and is entitled to review whether or not the claim was preserved at trial." *State* v. *Coleman*, 83 Conn. App. 672, 679, 851 A.2d 329, cert. denied, 271 Conn. 910, 859 A.2d 571 (2004), cert. denied, 544 U.S. 1050, 125 S. Ct. 2290, 161 L. Ed. 2d 1091 (2005).

As noted earlier, the essential elements of § 29-38 (a) are that the defendant: (1) owned, operated or occupied the vehicle; (2) had a weapon in the vehicle; (3) knew the weapon was in the vehicle; and (4) had no permit or registration for the weapon. See *State* v. *Delossantos*, supra, 211 Conn. 273. In addition to these elements, the defendant, citing *State* v. *Holloway*, 117 Conn. App. 798, 820, 982 A.2d 231 (2009), cert. denied, 297 Conn. 925, 998 A.2d 1194 (2010), *State* v. *Mebane*, 17 Conn. App. 243, 246, 551 A.2d 1268, cert. denied, 210 Conn. 811, 556 A.2d 609, cert. denied, 492 U.S. 919, 109 S. Ct. 3245, 106 L. Ed. 2d 591 (1989), and *State* v. *Smith*, 9 Conn. App. 330, 338–39, 518 A.2d 956 (1986), contends that if there are other passengers in the vehicle, the state must additionally prove that those passengers similarly did not possess a pistol permit. The present case is clearly distinguishable from each of the cases cited by the defendant because the gun here was discovered by police outside of the Nissan rather than inside the Nissan. In the present case, the evidence clearly indicates that the defendant was in exclusive control of the handgun from the moment he exited the Nissan until he discarded the handgun in the dumpster. Given Ingles' testimony that the defendant was driving at a very high rate of speed during the pursuit and exited the Nissan once it became immobilized—and the lack of evidence that anyone other than the defendant possessed the gun in the vehicle—it would be reasonable and logical for the jury also to conclude that the gun did not change hands while the defendant and the passenger were inside the Nissan. Therefore, there is little question that the defendant was in exclusive control of the handgun both inside and outside the Nissan. Accordingly, the facts of the present case more closely resemble those

of *State* v. *Gonzalez*, 25 Conn. App. 433, 445, 595 A.2d 443 (1991), aff'd, 222 Conn. 718, 609 A.2d 1003 (1992), in which the Appellate Court held that the state need not prove whether other occupants of a vehicle possessed pistol permits when the evidence clearly shows that a defendant possessed the gun inside and outside of the vehicle. Accordingly, we reject the defendant's alternative grounds for affirmance.

The judgment of the Appellate Court is reversed only as to that court's reversal of the defendant's conviction of the crimes of carrying a pistol without a permit and unlawful possession of a weapon in a vehicle, and the case is remanded to that court with direction to affirm the judgment of the trial court; the judgment of the Appellate Court is affirmed in all other respects.

In this opinion the other justices concurred.

[1] General Statutes § 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon his or her person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same issued as provided in section 29-28. . . ."

General Statutes (Rev. to 2011) § 29-38 (a) provides in relevant part: "Any person who knowingly has, in any vehicle owned, operated or occupied by such person, any weapon, any pistol or revolver for which a proper permit has not been issued as provided in section 29-28 or any machine gun which has not been registered as required by section 53-202, shall be fined not more than one thousand dollars or imprisoned not more than five years or both, and the presence of any such weapon, pistol or revolver, or machine gun in any vehicle shall be prima facie evidence of a violation of this section by the owner, operator and each occupant thereof. . . ." All references herein to § 29-38 (a) are to the 2011 revision of the statute unless otherwise indicated.

[2] Stephenson did not elaborate on the meaning of NCIC during his testimony. The NCIC is the National Crime Information Center, which is a database maintained by the Federal Bureau of Investigation containing aggregated criminal justice information from a variety of sources. *Commissioner of Correction* v. *Freedom of Information Commission*, 307 Conn. 53, 58 n.4, 52 A.3d 636 (2012). Some files in the database contain information about individuals, other files contain records regarding stolen property. Id.

[3] The transcript reflects that the prosecutor initially asked Imbimbo whether he searched the database with the defendant's name and a date of birth of November 29, 1998. The court later engaged in this colloquy with the prosecutor:

"The Court: . . . [W]hat was the date of birth, you inquired, I might have wrote it down wrong?

"[The Prosecutor]: November 29, 2008—I mean, I'm sorry, 1988.

"The Court: 1988. Okay. I'm sorry. I misheard."

On the basis of this colloquy, it is reasonable for the jury to infer that Imbimbo searched for the correct date of birth of November 29, 1988.

[4] The Appellate Court reversed the judgment of the trial court only as to the charges of carrying a pistol without a permit and unlawful possession of a weapon in a vehicle. *State* v. *Davis*, supra, 156 Conn. App. 195. The Appellate Court rejected the defendant's claim that the trial court improperly intervened and assisted the prosecution at trial and, accordingly, affirmed the judgment in all other respects. Id., 191–92.

[5] The defendant also claims as an alternative ground for affirmance that the trial court violated his federal and state due process rights when it failed to instruct the jury that the state must prove that: (1) the defendant did not have a temporary state pistol permit issued by a municipality; and (2) none of the occupants of the Nissan had a pistol permit. Because we conclude that the evidence was sufficient to support the jury's verdict that the defendant violated §§ 29-35 and 29-38, we reject this alternative ground for affirmance.

[6] We note that the third element of § 29-35 was not placed at issue by the defendant. See *State* v. *Tinsley*, 181 Conn. 388, 402, 435 A.2d 1002 (1980), cert. denied, 449 U.S. 1086, 101 S. Ct. 874, 66 L. Ed. 2d 811 (1981), overruled on other grounds by *State* v. *Pinnock*, 220 Conn. 765, 788, 601 A.2d 521 (1992).

[7] It is unclear from the record whether the database searched by Imbimbo is the same list as the firearms log searched by Colon.

[8] This court has repeatedly held that a jury may infer guilt based on consciousness of guilt evidence in conjunction with other evidence, as in the present case. The Appellate Court interpreted the principle in *State* v. *Bell*, 113 Conn. App. 25, 50, 964 A.2d 568, cert. denied, 291 Conn. 914, 969 A.2d 175 (2009), that "[a] consciousness of guilt instruction is . . . not so directly related to an essential element of the crime that an improper flight instruction raises constitutional implications"; (internal quotation marks omitted); to mean that "consciousness of guilt evidence cannot be relied on to prove the required substantive elements of a crime" and determined, therefore, that the defendant's flight from the police officers and the discarding of the handgun cannot support an inference that he did not possess a pistol permit. *State* v. *Davis*, supra, 156 Conn. App. 189. We disagree. See *State* v. *Morelli*, 293 Conn. 147, 154, 976 A.2d 678 (2009) (evidence of consciousness of guilt, along with other evidence, provided sufficient evidence to prove that defendant was under influence of intoxicating liquor, essential element of operating motor vehicle while under influence of intoxicating liquor in violation of General Statutes [Rev. to 2003] § 14-227a [a]); *State* v. *Groomes*, 232 Conn. 455, 473–74, 656 A.2d 646 (1995) (holding that trial court properly instructed jury that it may use defendant's flight as consciousness of guilt and as independent circumstantial evidence of defendant's guilt); *State* v. *Gray*, 221 Conn. 713, 722–24, 607 A.2d 391 (consciousness of guilt evidence manifested both before and after fire provided sufficient evidence for jury to conclude defendant was guilty of arson), cert. denied, 506 U.S. 872, 113 S. Ct. 207, 121 L. Ed. 2d 148 (1992); *State* v. *Marra*, 215 Conn. 716, 729, 579 A.2d 9 (1990) (consciousness of guilt evidence supported jury's reasonable inference that defendant aided in abduction); *State* v. *Weinberg*, 215 Conn. 231, 255, 575 A.2d 1003 ("consciousness of guilt is strong evidence that [a defendant] is indeed guilty" [internal quotation marks omitted]), cert. denied, 498 U.S. 967, 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990).